**LEDA, INC., Plaintiff,**

v.

**KILROY COMPANY OF TEXAS, INC., Defendant.**

No. H–82–3302.

United States District Court,
S.D. Texas,
Houston Division.

May 2, 1984.

434

John R. Pearson, Clann & Pearson, P.C., Houston, Tex., for plaintiff.

Don Weitinger, Weitinger, Steelhammer & Tucker, Harold K. Watson, Vinson & Elkins, Houston, Tex., for defendant.

SINGLETON, Chief Judge.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The above-styled cause, having been tried before the court without a jury, at the close of the evidence and after hearing arguments of counsel, the court makes the following findings of fact and conclusions of law.

The parties stipulate to the following facts:

Leda, Inc. ("Leda") was the owner and operator of the M/V Taurus on or about July 10, 1981 and at all times material to this suit. Kilroy Company of Texas ("Kilroy") was the owner and operator of the caisson structure State Tract 98–L, Well No. 1 ("Well No. 1") on or about July 10, 1981 and at all times material to this suit.

On or about July 10, 1981 the M/V Taurus was enroute to Louisiana in the waters of the Gulf of Mexico to resume fishing activities. At approximately 2300 hours on or about July 10, 1981, the M/V Taurus allided with the caisson Well No. 1. The well is located on the Outercontinental Shelf in the Gulf of Mexico, approximately ten miles east of the Galveston jetties.

Timothy J. Kinzie was the Captain of the M/V Taurus at the time of the allision in question. The allision caused severe damage to the vessel which subsequently sank and was declared a constructive total loss. Prior to this incident, the M/V Taurus was appraised and valued at $165,000. As a result of the allision Leda incurred survey, salvage and towing fees, and other miscellaneous expenses of $52,600, for a total loss of $217,610.

Joseph R. Kinzie was the Captain of the M/V Battleax at the time of the incident in question.

Kilroy cross-claimed for its damages to the boat landing in the amount of $20,096.56 and for the cost of repair to the lights and horn in the amount of $17,841.13, for a total of $37,937.69.

## FINDINGS OF FACT

The M/V Taurus and the M/V Battleax, both fishing vessels, departed Galveston enroute to the waters of the Gulf of Mexico off the Louisiana shore to resume fishing activities. Captain Tim Kinzie charted his course before leaving the Galveston Bay. His vessel was following the M/V Battleax.

Captain Kinzie had been a captain for six or seven years. The M/V Taurus was in seaworthy condition on the date in question. The weather was clear, visibility was good, and the sea was calm. Captain Kinzie navigated the vessel past the Galveston jetties. Then he turned the wheel over to his First Mate Joseph Andreu, with instructions to stay approximately one mile behind the M/V Battleax. The Captain went to his state room to rest.

Mr. Andreu has been in the fishing business for approximately thirty years and had been working on this vessel with Captain Kinzie for approximately four months at the time of the allision. Mr. Andreu was following the M/V Battleax and could see the lights on upcoming oil rigs. These rigs did not appear on the radar, therefore, Mr. Andreu kept a close watch out the windows on all sides of the vessel. After Mr. Andreu maneuvered the vessel to keep it aligned with the M/V Battleax, he struck defendant's Well No. 1. Mr. Andreu looked in that direction immediately before impact but did not see anything in the water. He testified that no lights or horn were operating on that well at the time of the allision.

Mr. Ray Rouse, a service supervisor of Tidelands Signal Corporation, testified that his employer is under contract to service the off-shore platforms, including Well No. 1. Mr. Rouse personally serviced Well No. 1 since approximately 1976. However, during 1981 the platform could not be serviced either because of rough weather or because drilling rigs were working intermittently on that platform. The last service call on Well No. 1, usually done every thirty days, was made in December of 1980. In June of 1981, Mr. Rouse learned that the rigs on Well No. 1 were about to leave. He called M.H. Production Company, who operates the structures for defendants, to arrange a service call but was informed that the crew had already serviced the navigational aids on that well and was told that he should wait until next month to make the call.

Approximately two weeks later Mr. Rouse learned of the allision. He was flown out to the rig and was the first person to examine the platform after the accident. He testified that the fog horn was not bolted to the platform and the wiring was not connected to the source of power. Similarly, the lights were not wired to the solar collector, and the batteries were dead. According to his testimony, the crew's failure to reinstall the lights and horn could be the only explanation for the condition of the equipment. The expert testimony of James Zimmerman, a structural engineer, confirms Mr. Rouse's testimony that the allision did not cause the damage to the equipment.

From the evidence produced at trial, this court concludes that Mr. Andreu kept a proper lookout when operating the M/V Taurus. The lights and fog horn on Well No. 1 were not properly reinstalled and were not in operation on the night of the allision. Defendant was negligent in failing to maintain the lights and horn in proper working condition, and was solely responsible for the allision. Defendant's negligence was the proximate cause of plaintiff's damages. The members of the crew on board the M/V Taurus were not contributorily negligent.

## CONCLUSIONS OF LAW

■ A presumption of fault exists against a moving vessel that strikes a stationary object, such as a dock or navigational aid. *Bunge Corp. v. M/V Furness Bridge*, 558 F.2d 790 (5th Cir.1977); *Brown & Root Operators, Inc. v. Zapata Off-Shore Co.*, 377 F.2d 724 (5th Cir.1967). The moving vessel has the burden of proving that it was without fault or that the allision was a result of fault of the stationary object. *Bunge*, 558 F.2d at 795.

**436**

 As owner of caisson State Tract 98–L, Well No. 1, Kilroy has a general statutory duty to provide the structure with proper operating lights. 33 C.F.R. §§ 67.01–67.15–10, 62.20; *Matter of Texaco, Inc.,* 570 F.Supp. 1272, 1283 (E.D.La.1983). Pursuant to a contract with Kilroy, M.H. Productions, Inc. was responsible for operating Well No. 1, and hired Tidelands Signal Corp. to maintain the navigational aids.

When Mr. Rouse of Tidelands learned that for the first time in six months it would be possible to service Well No. 1, he immediately called M.H. Productions, Inc. to arrange a service call. M.H. Productions, however, informed him that the rigging crew had completed the necessary servicing on the well's navigational aids and told Mr. Rouse to make the service call next month. The rigging crew did not reinstall the navigational aids and, as a consequence, the lights and horn were not operational.

On or about July 10, 1981, the M/V Taurus was sailing past Well No. 1, behind another vessel. The First Mate checked the radar but also used his own eyesight to spot rigs in the water. He spotted several rigs with bright lights that did not appear on his radar, and was careful to keep a proper lookout. Because Well No. 1 did not have a functioning light or horn, the First Mate could not see it in the night on the Gulf of Mexico. The M/V Taurus struck Well No. 1 and sank as a result.

 Kilroy was negligent in failing to properly maintain the light on Well No. 1 as required by federal law. That negligence was the proximate cause of the allision on July 10, 1981 and the sinking of the M/V Taurus. The crew on board the M/V Taurus was not negligent and the allision was not a result of plaintiff's fault. Therefore, plaintiff is entitled to recover the full amount of its loss, stipulated at $217,610.

Any findings of fact which may more properly be denominated as conclusion of law are hereby adopted as such. All conclusions of law more properly denominated as findings of fact are likewise adopted as such.

In accordance with the preceeding findings of fact and conclusion of law, the court hereby ORDERS, ADJUDGES, and DECREES that Kilroy Company of Texas, Inc. was negligent and that plaintiff is hereby entitled to recover damages of $217,610. The parties are hereby directed to prepare a judgment in conformity with these findings of fact and conclusions of law and to submit it to the court for entry within fifteen (15) days of this Order.